UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOCELYN A. INOA,

                            Plaintiff,

                            18-CV-163 (JPO)

              -v-

                            OPINION AND ORDER

NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,

                            Defendant.

J. PAUL OETKEN, District Judge:

    Pursuant to 42 U.S.C. § 405(g), Plaintiff Jocelyn A. Inoa challenges the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. The parties have filed cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 15.) For the reasons that follow, the Commissioner's motion is granted, and Plaintiff's motion is denied.

**I.    Background**

    Plaintiff Jocelyn A. Inoa is 56 years old. (Dkt. No. 7 ("Tr.") at 159.) She has a high school education. (Tr. at 208.) From January 1996 to February 2014, Inoa worked as a bus operator for the New York City Transit Authority. (*Id.*) As of February 2014, Inoa had stopped working because of spinal and cervical issues. (Tr. at 159, 207.)

    Inoa applied for social security benefits in July 2014 (Tr. at 159–60), but her application was denied (Tr. at 96–104). She then requested and received a hearing before an administrative law judge ("ALJ") to review the denial of her application. (Tr. at 105, 109–11.) Inoa's hearing before the ALJ was held on July 26, 2016. (Tr. at 50–83.) Inoa was represented by counsel at the hearing. (Tr. at 50.) At the hearing, Inoa testified about her experiences with head, neck, shoulder, back, and overall body pain. (Tr. at 56, 63–66.) Inoa also described the manner in

which these physical issues limited her abilities to bend, lift, and sit or stand for extended periods of time. (Tr. at 68–69.) Inoa further testified that she was unable to move her head from side to side without experiencing pain. (Tr. at 63.)

The ALJ also heard the testimony of Sugi Komarov, a vocational expert ("VE"). (Tr. at 72; *see also* 270–71 (Komarov's C.V.).) Prior to Komarov testifying, Inoa's counsel reviewed Komarov's expert credentials and did not object to Komarov testifying as a VE. (Tr. at 72.) At the start of her testimony, Komarov certified that her testimony would be consistent with the *Dictionary of Occupational Titles*, including its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (collectively, "DOT"). (Tr. at 73.) Komarov told the ALJ that if at any point her testimony was inconsistent with those publications, then she would explain the reasons for that departure. (*Id.*)

At one point during the examination of Komarov, the ALJ asked Komarov what sort of work was available in the national economy that could be performed by an individual of Inoa's age, education, and work experience who could perform "light exertional work" as defined in the DOT, who could frequently flex, extend, and rotate her neck, but who could only occasionally stoop, crouch, or reach overhead with her dominant hand. (Tr. at 73–74.) Komarov opined that such an individual would be able to perform four categories of light work available in the national economy: (1) housekeeping/cleaner, DOT code 323.687-014, a position in which there were approximately 247,000 jobs nationally; (2) office helper, DOT code 239.567-010, a position in which there were approximately 76,000 jobs nationally; (3) information clerk, DOT code 237.367-018, a position in which there were approximately 70,000 jobs nationally; and (4) furniture rental clerk, DOT code 295.357-018, a position in which there were approximately 50,000 jobs nationally. (Tr. at 74–75.)

Following Inoa's counsel's examination of Komarov, the ALJ again inquired of Komarov whether her testimony had been consistent with the DOT, and Komarov confirmed that it had been. (Tr. at 80.) The ALJ then asked Komarov about the apparent inconsistency of an individual limited to only occasional overhead reaching performing all four of the jobs she had previously described, in light of the fact that the DOT specified that three of those four jobs require "frequent reaching." (*Id.*) At the ALJ's prompting, Komarov confirmed that this deviation was "based on [her] experience on how those jobs are done." (*Id.*)

On November 1, 2016, the ALJ issued his findings and concluded that Inoa was not eligible for disability benefits. (Tr. at 28–42.) The ALJ determined that Inoa suffered from "the following severe impairments: cervical spine degenerative disc disease, disc herniation, and spondylosis, status post cervical spine fusion; lumbar spine lordosis, status post lumbar spine microdisectomy; thoracic spine mild scoliosis; chronic pain syndrome; right shoulder impingement syndrome; and headaches." (Tr. at 33.) The ALJ concluded, however, that Inoa's "combination of impairments [did not meet] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (Tr. at 34.)

The ALJ then turned to consideration of Inoa's residual functional capacity ("RFC"). (*Id.*) The ALJ found that Inoa retained the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[,] except [that Inoa] is limited to occasional stooping, crouching, and reaching overhead with the right upper extremity. [Inoa] is also limited to frequently flexing, extending, and rotating the neck, and no[t] working at unprotected heights." (*Id.*) After reviewing the medical and record evidence on which the ALJ based its RFC determination (Tr. at 34–40), the ALJ further found that Inoa's RFC would not permit her to continue to perform her

3

past work as a bus driver, basing this determination in part on Komarov's testimony regarding whether someone with Inoa's RFC could perform that work (Tr. at 40).

Finally, having determined that Inoa was unable to perform her past work, the ALJ turned to the question of whether given Inoa's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Inoa] can perform." (*Id.*) On the basis of Komarov's testimony, the ALJ identified four such jobs: (1) housekeeping/cleaner; (2) office helper; (3) information clerk; and (4) furniture rental clerk. (Tr. at 41.)

In so finding, the ALJ noted one apparent discrepancy between his findings regarding Inoa's RFC and the DOT's descriptions of these four jobs, that being that Inoa's "limitations involving neck movements and overhead reaching are not contained in the [DOT's]" descriptions of all of the four jobs identified. (*Id.*) The ALJ addressed this apparent conflict by noting that the VE had explained that this aspect of her testimony had been based on her "vocational field experience, education, and training," and that Inoa failed to contest the VE's qualifications at the hearing. (*Id.*) The ALJ thus found there to be a "reasonable basis for the discrepancy." (*Id.*)

On the basis of these findings, the ALJ concluded that Inoa was not "under a disability, as defined in the Social Security Act, from [the date she stopped working], through the date of [the ALJ's] decision." (Tr. at 41.) Inoa then requested review of that decision by the Social Security Appeals Council (Tr. at 8–9), and the Appeals Council denied Inoa's appeal (Tr. at 1). Inoa filed this suit on January 9, 2018. (Dkt. No. 1.) Both parties now move for judgment on the pleadings. (Dkt. Nos. 11, 15.)

## II. Legal Standards

### A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1990) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A court may not substitute its judgment for the Commissioner's "even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)). This is because "substantial evidence" is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). Under this "very deferential" substantial-evidence standard, this Court may reject the ALJ's view of the facts "only if a reasonable factfinder would have to conclude otherwise." *Id.* (emphasis omitted) (second quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). The Court does not decide whether Inoa is in fact disabled.

### B. Framework for Disability Claims

To establish a disability under the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability at issue must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience,

5

engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration employs a five-step procedure to analyze disability determinations. The Commissioner considers whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a "severe" impairment as defined in Social Security Administration's regulations; (3) the claimant has an impairment listed in Appendix I of the regulations; (4) the claimant has a residual functional capacity to perform her past work; and (5) there is other work the claimant could perform. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (Sotomayor, J.); *see also* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at the first four steps; the Commissioner bears the burden at the final step. *Rosa*, 168 F.3d at 77. In conducting its analysis, the ALJ has an affirmative duty to "develop the record." *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).

### C. Use of Vocational Expert Testimony

"A 2000 Social Security Administration Policy Interpretation Ruling (the 'Ruling') governs the Commissioner's assessment of whether any particular job can accommodate a given claimant's physical limitations." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019). The Ruling provides that the Commissioner must "rely primarily on the DOT . . . for information about the requirements of work in the national economy." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). However, the Ruling also permits ALJs to elicit testimony from VEs "to resolve complex vocational issues." *Id.* When doing so, ALJs must consider whether the "evidence provided by a VE . . . [is] consistent with the occupational information supplied by the DOT." *Id.* Whenever there is any "apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the

6

VE . . . evidence to support a determination or decision about whether the claimant is disabled."
*Id.*

As the Second Circuit has explained, "the Ruling makes clear that [an ALJ is] obliged to identify and resolve [any] *apparent* conflict between [VE] testimony and the [DOT], even if there is a chance that, upon inquiry, no *actual* conflict would have emerged." *Lockwood*, 914 F.3d at 93. This represents "an independent, affirmative obligation on the part of the ALJ to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [vocational expert] if there is one." *Id.* at 94 (alteration in original) (quoting *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018).

After identifying and inquiring into any apparent conflicts between VE testimony and DOT occupational definitions, an ALJ then "must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). An ALJ's failure to comply with each these steps can constitute an independent ground for remand. *Lockwood*, 914 F.3d at 94.

**III. Discussion**

Inoa does not contest the ALJ's findings with respect to steps one through four of the Social Security Administration's five-step procedure to analyze disability determinations. (*See* Dkt. No. 12 at 7–8.) Nor could she. In briefing the instant motions, the Commissioner has thoroughly explicated the medical record on which the ALJ based his findings regarding Inoa's impairments and her RFC. (Dkt. No. 16 at 4–15.) And the Court, having conducted an independent review of this record evidence, agrees with the Commissioner that "substantial evidence supports the ALJ's RFC determination." (Dkt. No. 16 at 19 (capitalizations removed).)

7

Instead, Inoa challenges only the ALJ's finding at step five of the disability analysis, namely, that there existed work in the national economy that someone with Inoa's RFC would be capable of performing. (*See* Dkt. No. 12 at 7–8.) Inoa presents two arguments in support of her challenge to this finding: (1) that three of the four jobs that the ALJ found that Inoa was capable of performing require "frequent reaching," which is inconsistent with the ALJ's RFC finding of only "occasional reaching"; and (2) that the ALJ improperly calculated the numbers of available positions in the national economy for three of these four jobs. (*Id.*) The Court is unpersuaded that either contention provides a basis for remand.

The Court first addresses Inoa's contention regarding the apparent conflict between "the DOT['s descriptions of] Information Clerk, Office Helper, [and] Housekeeping Cleaner [as] requir[ing] frequent reaching[, and] the RFC provided by the ALJ [that] limited [Inoa] to only occasional reaching." (Dkt. No. 12 at 7.) Inoa is correct to note that a VE's "[t]estimony that a claimant with overhead reaching limitations is capable of performing a job that the [DOT] describes as requiring [frequent] 'reaching,' . . . creates at least an *apparent* conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony." *Lockwood*, 914 F.3d at 93. Accordingly, here, "the onus [was] on the Commissioner, acting through her ALJ[], to affirmatively [i]dentify [this] conflict[]," and to "take any [necessary] steps to explore or resolve that conflict." *Id.* at 93–94 (third alteration in original) (internal quotation marks omitted).

The Court concludes that the ALJ fulfilled that obligation with respect to any apparent contradictions between Komarov's expert testimony regarding the jobs that Inoa could perform given her RFC and the DOT's descriptions of those jobs. Indeed, the ALJ noted on the record of the hearing the precise apparent conflict now identified by Inoa in her briefing. (Tr. at 80.) The

ALJ did so by asking Komarov to address the fact that, according to the DOT, "most of the jobs [Komarov had described] would require frequent reaching," and asking Komarov if "limiting overhead reaching to occasional [would] affect any of the jobs that" Komarov had suggested that someone with Inoa's RFC might be able to form. (*Id.*) At the ALJ's prompting, Komarov did not disagree that this was a deviation from the DOT, but confirmed that this deviation was "based on [her] experience on how those jobs are done." (*Id.*) The ALJ incorporated his investigation into and resolution of this apparent conflict, as well as Inoa's failure to raise any objections to Komarov's expert testimony, into his ultimate findings regarding Inoa's ability to perform work available in the national economy. (Tr. at 41.) Specifically, the ALJ acknowledged in his final decision that Inoa's "limitations involving neck movements and overhead reaching are not contained in the [DOT's]" descriptions of the relevant jobs described by Komarov. (*Id.*) The ALJ then addressed and resolved that apparent conflict by noting that Komarov had based this deviation from the DOT on her "vocational field experience, education, and training," and that Inoa failed to contest Komarov's qualifications as a VE at the hearing. (*Id.*) The ALJ thus found there to be a "reasonable basis for the discrepancy." (*Id.*)

The ALJ's inquiry into and resolution of this apparent conflict complied with the Ruling's procedures governing what an ALJ must do whenever "there is an apparent unresolved conflict between VE . . . evidence and the DOT." SSR 00-4p, 2000 WL 1898704, at *2. That is because the ALJ here "inquire[d], on the record, as to whether or not there [was] such [an in]consistency," then "elicit[ed] a reasonable explanation for the conflict before relying on the VE . . . evidence," and finally resolved "the conflict by determining if the explanation given by the VE . . . [was] reasonable and provid[ing] a basis for relying on the VE . . . testimony rather than on the DOT information." *Id.* And the ALJ conducted this inquiry not with generic and

9

unspecific "catch-all questions" of the type that the Second Circuit has rejected, *Lockwood*, 914 F.3d at 93 (internal quotation marks and brackets omitted), but by identifying and describing the precise apparent conflict now at issue. Accordingly, the Court concludes that any conflict between Komarov's testimony and the DOT does not provide a basis for remand, because the ALJ's reliance on Komarov's testimony rather than the DOT was both legally proper and supported by substantial evidence.

The Court turns now to Inoa's remaining contention: that the ALJ improperly calculated the numbers of jobs available in the national economy for three of the four positions that the ALJ found Inoa capable of performing given her RFC. (Dkt. No. 12 at 7–8.) In support of this contention, Inoa cites the Bureau of Labor Statistics data showing that the jobs of office helper, housekeeping cleaner, and furniture retail clerk are each part of broader Occupational Employment Statistics ("OES") job groups that in total contain an insignificantly greater number of positions than the numbers of positions Komarov testified were available in the national economy for each of these three jobs in particular.[1] (*Id.*) According to Inoa, "[i]t is extremely unlikely almost all jobs in [these] OES categor[ies]," each of "which includes [a number of]

---

[1] Specifically, Inoa contends that the number of "Office Helper" positions Komarov testified to be available in the national economy would amount to 99% of all available positions in the general occupation group of "Couriers and Messengers," despite there being six other DOT jobs in addition to Office Helper in that occupation group; that the number of "Housekeeping Cleaner" positions Komarov testified to be available in the national economy would amount to 27% of all available positions in the occupation group of "Maids and Housekeeping Cleaners," despite there being eight other DOT jobs in addition to Housekeeping Cleaner in that occupation group; and that the number of "Furniture Rental Clerk" positions Komarov represented to be available in the national economy would amount to 11% of all available positions in the occupation group of "Counter and Rental Clerks," despite there being twenty-four other DOT jobs in addition to Furniture Rental Clerk in that occupation group. (Dkt. No. 12 at 7–8.)

10

other DOT codes," would be so disproportionately concentrated in the three specific jobs identified and quantified by Komarov. (Dkt. No. 12 at 8.)

The Second Circuit has explained that an ALJ's reliance on VE testimony regarding the number of positions available in the national economy for a given job title is subject to the same "substantial evidence" standard of review that in general governs judicial review of denials of social security benefits. *Brault*, 683 F.3d at 450 n.6. The Second Circuit based this holding in part on its conclusion that "[an] ALJ [does] not need to find specific numbers of jobs—all [an ALJ is] required to do [is] find that 'substantial' positions exist." *Id.*

In *Brault*, the Second Circuit rejected a challenge to an ALJ's reliance on VE testimony regarding the number of jobs available in the economy where the ALJ had "sought and received a stipulation from [the petitioner's] counsel regarding the VE's expertise and qualifications" and where petitioner's "attorney had a full opportunity to explain his objections in significant detail," even "challenging some of the expert's specific numbers." *Id.* at 450–51. Noting the "absence of any 'applicable regulation or decision of [the Second Circuit] requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation," *id.* at 450 (quoting *Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008)), the *Brault* court held that the ALJ permissibly relied on VE expert testimony regarding the number of available jobs where the VE had "identified the sources he generally consulted to determine such figures." *Id.*; *see also McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) ("[A] vocational expert was not required to articulate a more specific basis for his opinion [regarding job numbers], and the ALJ reasonably credited this testimony, [where the testimony] was given on the basis of the expert's professional experience and clinical judgment, and [where it] was not undermined by any evidence in the record.").

11

Applying these standards here, this Court cannot say that the ALJ lacked "substantial evidence" on which to conclude that "'substantial' positions exist[ed]" for all four jobs about which Komarov testified. *Brault*, 683 F.3d at 450 n.6. As in *Brault*, *see* 683 F.3d at 451, here too Inoa's counsel reviewed Komarov's qualifications and raised no objection to them prior to her testimony, and the ALJ, after qualifying Komarov as a VE, then heard her expert testimony regarding the numbers of available jobs without any objection from Inoa or her counsel. (Tr. at 72, 74–75; *see also* Tr. at 270–71 (Komarov's C.V.).) Given that Komarov had earlier explained that her testimony was offered "on the basis of [her] professional experience and clinical judgment, and [it] was not undermined by any evidence in the record," *McIntyre*, 758 F.3d at 152, "[n]othing more was required" of the ALJ, *Brault*, 683 F.3d at 451. In the "absence of any applicable regulation or [a Second Circuit] decision . . . requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation," *id.* at 450 (internal quotation marks omitted), the Court cannot say that the ALJ's reliance on Komarov's qualified and unobjected-to expert testimony regarding those numbers constitutes legal error. And particularly because "[t]he ALJ did not need to find specific numbers of jobs—all [that] he was required to do was find that 'substantial' positions exist," the Court must conclude that the record as a whole, and most particularly Komarov's expert testimony, provides "substantial evidence supporting that finding." *Id.* at 450 n.6.

Finally, the Court notes that Inoa does not present any challenge to Komarov's testimony regarding the number of jobs available for the position of information clerk, a position for which Komarov testified that 70,000 jobs existed nationally. (*See* Dkt. No. 12 at 7–8.) "Courts have generally held that what constitutes a 'significant' number is fairly minimal" for purposes of there being sufficient available work in the national economy. *Walker v. Colvin*, No. 15 Civ.

465, 2016 WL 4768806, at *4 (N.D.N.Y. Sept. 13, 2016) (Hummel, Mag. J.) (quoting *Fox v. Comm'r of Soc. Sec.*, No. 02 Civ. 1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)); *see also Crossman v. Comm'r of Soc. Sec.*, No. 14 Civ. 1294, 2015 WL 5943506, at *17 (N.D.N.Y. Oct. 13, 2015) (Baxter, Mag. J.) (collecting cases holding that ALJ findings regarding availability of job numbers ranging from 16,000 to 112,000 jobs nationally satisfied the "significant number" aspect of the Commissioner's burden at step five). Here, Inoa's failure to identify any basis for calling into question Komarov's expert testimony that at least 70,000 information clerk positions existed nationally defeats her contention that the ALJ lacked substantial evidence on which to conclude "that 'substantial' positions exist[ed]" for at least one job that Inoa retained the capacity to perform. *Brault*, 683 F.3d at 450 n.6. And because in order to satisfy her burden at step five of the disability determination, "[t]he Commissioner need show only one job existing in the national economy that [a petitioner] can perform," *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011), the Court concludes that the record's still-unchallenged evidence regarding the 70,000 jobs available for the position of information clerk is independently sufficient to satisfy the Commissioner's burden.

**IV.   Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is GRANTED, and Plaintiff's motion for judgment on the pleadings is DENIED. The Clerk of Court is directed to close the motions at Docket Numbers 11 and 15 and to close this case.

SO ORDERED.

Dated: March 28, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge